at 3:48 in the morning?
A. If I wanted it at 3:48 in the morning I probably could, yes.
Q. And how could you get that access?
A. I could log on how I always access MMIS.
Q. From your house?
A. No. From work.
Q. So you would be logging on from your work at 3:48 in the morning?
A. I don't work at 3:48 in the morning, but if I did I could log on from work.
Q. Did you log on at 3:48 in the morning at your house?
A. I have no idea what you're talking about even. I'm sorry. No, I can't log onto MMIS from my house.
Q. Did you have access to the MMIS II on May 24th, 2000, at 5:18 a.m.?
A. I have, again, no idea what you're talking about.
Q. Okay. Did you have access to the MMIS II system on May 24th at 5:00 in the morning?
A. I have no idea what you're talking about. I have no idea what you're looking at.
Q. I'm going to show you in a few minutes.
A. I have no idea what you are talking about.
Q. So what were the hours that you worked on this disk?
A. I don't understand the question.

SCANNED
OCT 24 2005
U.S. DISTRICT COURT ST. PAUL

Q. What hours did you work on the disk?
A. The hours I'm in the office.
Q. That you're in the office, and what hours are those?
A. I typically work from 8:00 to 4:30, although I could start earlier and end later.
Q. So you get done at 4:30, correct?
A. Typically, although I can work later.
MR. WILHELM: It's not been offered.
DEFENDANT THIGPEN: I'm about to offer it.
BY DEFENDANT THIGPEN:
Q. Are you familiar with this? This is a copy of that disk.
A. No, I'm not at all familiar with this. I don't know what it is.
Q. So these are not your file numbers?
A. I can't tell that from that.
Q. If you looked at the computer and went back to the file numbers, I could lay the foundation that these file numbers match up?
A. I don't know anything about that sheet of paper so --
Q. It's a printout of what I'm going to pull up and show you.
MR. WILHELM: Objection, move to strike, Your Honor. Mr. Thigpen is not under oath to testify.
DEFENDANT THIGPEN: I can go under oath if you

want to swear me in.

THE COURT: Well, we may do that, but right now you're not so -- act as a lawyer instead of a witness. Go ahead. What's the question to this witness?

DEFENDANT THIGPEN: I want to know are these her files, these numbers here.

THE COURT: I think she has answered it.

BY DEFENDANT THIGPEN:

Q. Is it true that you gave the defense another disk last week?

A. Yes.

Q. And why was that?

A. Because you requested it.

Q. What was wrong with the one you had given me prior?

A. Well, the one you had prior isn't the one we gave you.

Q. Who gave me that one?

A. I understand from you that it was a copy given to you by your previous defense counsel.

Q. So you're saying that the defense counsel, the lawyers modified the disk?

A. No, I didn't say that. I just said that's where the disk came from.

Q. Okay. So they didn't modify it, correct?

A. I don't know. I don't know what you did with the disk. I don't know what happened to the disk after we sent it to

the defense counsel.

Q. Are you aware that after you gave the defendant the disk that if you went back and tried to erase it that you left some of the evidence still on there? Are you aware of that?

A. I'm not sure what you're talking about.

Q. That it was still left on there that the disk was modified at 3:48 in the morning, somewhere in that time, three o'clock in the morning, you forgot to erase all of it. Are you aware of that?

A. I have no idea what you're talking about again.

Q. Do you need for me to show the Court because it is in this disk that --

THE COURT: Well, so far there has been no foundation laid for that exhibit, which means it's not going to come on.

DEFENDANT THIGPEN: It's on this exhibit right here.

THE COURT: Well, I haven't seen that. You know, that disk that's in your machine right now is in evidence. If there is anything on that disk that's in evidence, you can show it to the jury.

DEFENDANT THIGPEN: Okay.

THE COURT: Do you want the jury to see this?

DEFENDANT THIGPEN: The snow people.

THE COURT: Doesn't seem to be very relevant to what we're doing here, although it's a pleasant picture.

DEFENDANT THIGPEN: They can see it. That's fine.

THE COURT: Okay.

DEFENDANT THIGPEN: I'm going to get that off there. Sorry.

BY DEFENDANT THIGPEN:

Q. And this is what you have given us last week, and this is modified 11/20 at 3:48 a.m. Did you log on from your house?

A. I don't have any picture of anything on here.

Q. She doesn't see it?

A. No.

THE COURT: What you have there, all we have is a picture of the -- of a --

DEFENDANT THIGPEN: You have the same thing that I have.

THE COURT: I don't think so. We certainly don't know any log on. All it shows is the number of files.

BY DEFENDANT THIGPEN:

Q. If you see --

A. Oh, I see it. On the left side.

Q. QRD file modified 11/20/00 at 3:48 a.m. Did you log on then from your house while you were at the Attorney

General's Office?
A. I didn't create this file.
Q. But you gave it to the defense last week?
A. I didn't create this file, the specific file that you're looking at it, so I don't know why that has a time at that time.
Q. So this isn't your file now?
A. This is a file that was given to me by SURS, and so therefore I don't know why there is a date and time at that time. It was not a file I created.
Q. Who created it?
A. SURS.
Q. But Larry Woods states --
MR. WILHELM: Objection. Use of hearsay in cross-examination.
THE COURT: Sustained.
BY DEFENDANT THIGPEN:
Q. Okay. Let's go look at the next file. At 5:20 a.m. in the morning it was modified again, and if you had to modify it because you have stated before that you have to build it, and other people who have testified before have said that you can't data download it. You have to build it, is that correct?
A. I don't know what other people testified to before.
Q. But is it correct that you have to build it?

A. No. I don't know how you're using the word "build." This is another file from SURS here.
Q. And why doesn't it say SURS? Isn't SURS used for surveillance integrity review unit?
A. Yes, that's what SURS stands for.
Q. If you got something from SURS, shouldn't it say surveillance integrity review unit on the disk?
A. Well, again, like I said, I don't control how SURS names their files.
Q. Let's look at another one. Again at 5:08 a.m. on the 24th of May 2001 before Mr. Thigpen even had a lawyer that you gave this disk to, is that correct?
A. This is another file from SURS. Again, the dates and times are based on when SURS created the file. It's a SURS file.
Q. If the SURS created the file, wouldn't all the files be on there?
A. Each individual file is for each individual recipient, and in each file would be all of the claims for all of the providers for each recipient.
Q. 5:14 a.m., modified. Why is SURS modifying so much if it's not you?
A. The modified date is the date the file was created. That's the last time it was modified.
Q. Why are they doing a data download?

A. They have to create the file so that they can give it to me.
Q. So to create the file, you have to build the file, is that correct?
A. I don't know how SURS does their files.
Q. Just, can you tell me why did Paul Xiong or whoever give this to you named the file Heidi Hunter?
A. Because I'm the person who requested it, I guess.
Q. So when did you do your work on the disk?
A. I'm not sure I'm following you.
Q. When did you do your work on the disk, your analysis?
A. When did I start my data analysis, is that what you are asking?
Q. Yes. When did you do your data analysis on the disk?
A. Well, I started using or started doing data analysis probably back after we got the case, and I started looking at hospitalizations and various things and deciding who to interview.
Q. So that's probably back in September 2000?
A. Later than that.
Q. Huh?
A. A little later than that. Maybe September 2000.
Q. September 2000?
A. Mm-hmm (Yes).
Q. Okay. Would you say probably around September 10th,

2001 -- when did Paul Xiong stop working for the Department of Human Services? They said he no longer works there.
A. I don't know when he stopped working there.
Q. But it is true that you guys have frequent connections to the SURS unit and the Attorney General unit because they refer cases, is that correct?
A. Yes, they refer cases to us.
Q. So you would know the people on a regular basis?
A. I know who works there.
Q. Yeah. So when did Paul Xiong quit?
A. Like I said, I don't know when he left.
Q. And this, as we have here, you see rebuilt New Life. Why would Paul Xiong have to recreate, rebuild New Life?
A. Because the first request that I made he left off the warrant dates. That's why it says rebuild New Life with warrant date. As soon as I got the disk and it didn't have the correct date, I had him do another one, and that's why he called it that.
Q. So Paul Xiong rebuilt it, or you did?
A. He did it.
Q. This is all his work?
A. That file is.
Q. So if you had to go through it by hand by hand, how long would it take?
A. Go through what by hand?

Q. Go through the claims hand by hand?
A. I'm not sure what you mean.
Q. If you had to go through it hand by hand, how long would it take?
A. I don't understand hand by hand.
Q. If you had to pull the data hand by hand, how long would it take?
A. You mean if I had to pull the data myself off the MMIS system?
Q. Yes.
A. Well, it depends if I did it for all the recipients or just the nine recipients. I don't think I could give you a time estimate.
Q. Okay. So the ideal program is what?
A. IDEA?
Q. Yeah. IDEA.
A. It's just a program. It is kind of similar to Excel or Access. It's a database program. I can put data in, and I can sort it and summarize it.
Q. When you say sort, what do you mean?
A. Like I can sort by date of service or I can sort by recipient.
Q. Okay. Did someone tell you to do this?
A. Do what?
Q. Modify the disk?

A. I don't understand.

Q. Did someone tell you to modify the disk?

A. The disk hasn't been modified to my knowledge.

Q. In front of you today sits a laptop with a disk in it with a screen in it, and it says it has been modified. Are you saying it hasn't been modified?

A. Every file has a modification date and time, every file.

Q. Why was it modified?

A. The modification date and time for a file is the last time any changes were saved to a file. It could also be the date it was created if no changes were subsequently made to the file.

DEFENDANT THIGPEN: I think it's already been offered as an exhibit, but I need to show her, Your Honor.

THE COURT: Are these Plaintiff's Exhibits 1 through 19?

DEFENDANT THIGPEN: Yes.

THE COURT: Is that what you've got?

DEFENDANT THIGPEN: Yes.

BY DEFENDANT THIGPEN:

Q. Are you familiar with those?

A. Yes.

Q. Okay.

MR. WILHELM: Your Honor, just so the record

reflects what Mr. Thigpen was showing me, it's part of one of the exhibits, and I can't call to mind which one it is particularly, but I have no objection to his use of it in cross-examination.

THE COURT: All right. Thank you. What number is that, Mr. Thigpen?

DEFENDANT THIGPEN: I think it's number -- Mary Krueger. I believe she's Number 4.

THE COURT: 4 is this. What we're seeing here on the screen is 4, CD.

MR. WILHELM: Plaintiff's 4, Your Honor.

THE COURT: Oh, Plaintiff's 4. Yes, that has been received.

Now you have to go off your computer and go back onto the document camera.

DEFENDANT THIGPEN: To this for just a quick second.

THE COURT: To the document camera. There you go, and you want to tap the lower right hand side to get off the yellow marks.

DEFENDANT THIGPEN: No. I'm okay.

THE COURT: We do. The lower right-hand side will take them off. It is the upper right-hand side.

DEFENDANT THIGPEN: Put Eugene Johnson back up there.

THE COURT: What do you want to see?

DEFENDANT THIGPEN: It's freezing Eugene Johnson for some reason. Okay.

BY DEFENDANT THIGPEN:

Q. So this data that we see in front of us, you looked at the MMIS II system, correct?

A. Yes.

Q. If that is not your disk on the laptop, why hasn't the defendant been provided a copy of this disk?

A. I don't understand. This is -- you've got a copy of New Life's data.

Q. You said that wasn't your disk. Is that what you said?

A. Which disk, the one that's in the CD?

Q. The one that's in the CD.

A. I don't know if it is my disk or not.

Q. You don't know if it's your disk or not?

A. I don't know. I haven't seen it.

Q. The one that we've been looking at for the last 15 minutes?

A. No, I haven't seen it. I don't know if it's the disk, but it's the files and stuff that were on the disk.

Q. So how did you create this? When you sat down at your disk and looked at the MMIS II system, how did you create this?

THE COURT: This being --

DEFENDANT THIGPEN: From her system, her disk. This is computerized.

THE COURT: The record only takes down words, Mr. Thigpen, and I know what you're thinking, but I want to make sure that anybody who reads this record understands. When you say "this," the person reading this record can't see what is in front of us, so you have to kind of describe it in a way, this being --

DEFENDANT THIGPEN: The computerized disk from the MMIS II system.

THE COURT: Are you asking the witness to look at what is now on her screen?

DEFENDANT THIGPEN: Yes.

THE COURT: I don't think that describes what's on the screen now.

BY DEFENDANT THIGPEN:

Q. What is on the screen is Plaintiff's Exhibit Number 4, Mary Krueger. It says, no other medical services provided on that date or only pharmaceutical?

A. Yes. That's what it says.

Q. Now, when you did that, did you have a disk that you saved the information on?

A. Well, this spread sheet was created by a number of things, but this, the data with the New Life claims is data that is on that -- on that disk you're looking at. It

would be in one of the files.

Q. So if the data is on that disk, and it's in one of the files, there was no need for you to spend six months doing a financial analysis, is that correct?

A. I don't understand the question.

Q. If the data on that disk in the computer is not your data and it's already been done, why did you need to do any financial analysis on this case?

A. Well, I had to do the analysis. He just gave me the claims. I had to do the analysis involving the claims and all the documentation and interviews with recipients and other witnesses.

Q. So where is that data from you?

A. I'm not sure what you mean.

Q. Where is the data from Heidi Hunter? You saved no information to no disk?

A. I don't understand the question.

Q. Did you save any information that you pulled down from the MMIS II system to a disk?

A. Yes.

Q. Where is that disk?

A. It's on the disk that we were just looking at.

Q. How did you convert that disk we were looking at?

A. What do you mean, "convert it"?

Q. Didn't it have to be converted?

A. I don't know what you mean by "convert."

Q. If you put that disk into a laptop right now, are you telling me there is not any kind of way to roll it to your file?

A. I'm sorry. I don't understand what you're saying.

Q. How was it converted?

A. How was what converted?

Q. The data that you received from the SURS?

A. I imported it into an Excel spread sheet.

DEFENDANT THIGPEN: Your Honor, may we approach?

THE COURT: Do you know what an Excel spread sheet is?

DEFENDANT THIGPEN: Yes. May we approach?

THE COURT: No. I don't know why you want to approach. She is giving you answers to every question you are asking to the best of her ability. Just because you don't know --

DEFENDANT THIGPEN: No, I know the right thing to say. That's why I want to approach. She just said she imported to an Excel spread sheet, and if you import something into an Excel spread sheet --

THE COURT: I don't want to get into a discussion with you in front of the jury. Why don't you ask her whether the exhibit that is now being shown to the jury on the screen is the result of her analysis based on her Excel