spread sheet?

In my little limited knowledge of computers, this looks like an Excel spread sheet sitting here in front of us right now, and maybe you could ask her that question and find out. Instead of beating around the bush, ask her the question.

BY DEFENDANT THIGPEN:

Q. Why would you have to import it into an Excel spread sheet if you got the information from the SURS that you say was already readable?

A. Well, so I that could use the data, so that I could sort it.

Q. So it was unreadable when you got it, correct?

A. No.

Q. Why did you have to sort it?

A. It's easier to use that way.

Q. Is this the way that it came that's in the laptop?

A. You mean in this order or --

Q. In that format?

A. No, it didn't come in this format. We've added columns to this.

THE COURT: Is this something the jury has already seen? It looks like you're going to a different file. Is this something the jury has already seen?

DEFENDANT THIGPEN: I'm going to a different

SCANNED
OCT 24 2005
U.S. DISTRICT COURT ST. PAUL

file.

THE COURT: I'm going to turn off the monitor until you get there, at least until we know it is something that has been received. So much simpler without computers. We have all these great screens in front of us. Maybe we should do, are you going to take a minute?

DEFENDANT THIGPEN: Yeah.

THE COURT: Let's take a break and you can get set with what you want to do. The jury doesn't have to sit and watch that going on. We'll take a ten-minute recess. Remember the caution I've given you. Don't talk to anyone. Don't let anyone talk to you.

(Recess taken.)

(In open court without the Jury present.)

THE COURT: I understand there is a little dispute about something.

MR. WILHELM: There is, Your Honor. I have been given to understand the disk in the machine is not the disk that Mr. Thigpen represented to the Court that it was. As the Court will recall, I asked Mr. Thigpen at the bench whether he could assure me that the disk he was about to put into his computer and display was the same one that we had turned over and marked as Exhibit 4.

My recollection is that he said that it was. Ms. Hunter marked that disk in a particular way. I am

given to understand that the disk that we have been looking at does not bear that mark and is not the disk we turned over last week.

Therefore, we have a problem with things like the modification date. The Court will understand that once we give a piece of electronic information out, it can be modified by anyone, lawyers, defendants or anyone else.

THE COURT: Mr. Thigpen?

DEFENDANT THIGPEN: That is totally ridiculous.

THE COURT: Don't talk about ridiculous. Just tell me --

DEFENDANT THIGPEN: That is the disk, Your Honor, I did not modify the disk. That is the disk.

THE COURT: Let me ask you a question because I was concerned about this also when we were up at side-bar. You correct me if I'm wrong, but at least during this case you have probably had given to you by the plaintiffs at least three disks or three different separate disks.

You've had at least one back in the Minnesota case. It seems to me that you've had at least two disks here of similar materials, two disks here in this courtroom, and is the one that's in the computer, your laptop, the one that was last given to you by Mr. Wilhelm which was on, what day was that, Tuesday?

DEFENDANT THIGPEN: Yes, that is the disk that

they gave me.

MR. WILHELM: May we see it? It has a particular mark.

THE COURT: We'll put Ms. Hunter back on the stand because she's under oath. If she is the one that identifies it or identifies that it was not the disk that just was given, I would like to hear that from Ms. Hunter rather than the testimony of lawyers.

DEFENDANT THIGPEN: I had already looked at the disk and said it was her disk. I don't see what the problem is. She is under oath. She already did that.

THE COURT: No, she didn't. As a matter of fact, it was very clear what she said under oath. Ms. Hunter is a very careful witness, and I noticed that. She does not say anything she doesn't believe. She said she doesn't know it because she can't see the disk, and nobody showed it to her.

That's her testimony, and so why don't you show her the disk, and if you've done that already --

DEFENDANT THIGPEN: I showed it -- remember I showed you the disk, and you said I can't tell if it's that disk until you put it on the screen. Didn't you say that?

THE WITNESS: I said, if this is the disk that he showed me up here, it's not the disk we gave him.

THE COURT: I'm sorry?

THE WITNESS: The disk that he showed me before he put it in that machine --

DEFENDANT THIGPEN: That is the disk.

THE WITNESS: -- it is not the disk that we gave him.

THE COURT: All right. So could you have told when he showed it to you that it was not the disk that you had given him?

THE WITNESS: Well, he showed me a disk and said if I recognized it. I said I didn't. If he had mentioned that he was trying to show me the disk that I gave him last Tuesday, I would have been able to say definitely not, but I didn't know which disk he was trying to show me.

THE COURT: All right. So you were a bit confused at that point.

THE WITNESS: Yes.

THE COURT: All right. Do you have the disk that they gave you last Tuesday?

DEFENDANT THIGPEN: That's the disk they gave me.

THE COURT: And Ms. Hunter says it's not the disk. Do you want to pull it out of your laptop and show it to Ms. Hunter because I want to know why Ms. Hunter believes it's not the disk that you were given last Tuesday.

THE WITNESS: The disk that we gave him last week

I actually wrote copy of document number, I can't remember the document number. It is like 128 something something, but I wrote actually something on the disk.

THE COURT: Did you write it on the shiny side, the data side?

THE WITNESS: I would have written it on this side. Actually, this side was blank. This isn't even a CD that we did. This side was blank, and I wrote it on this side, not the data side.

THE COURT: So it said copy of?

THE WITNESS: Mm-hmm (Yes).

THE COURT: And I recall seeing that writing on the disk that was introduced, as a matter of fact, because it did have it written in fairly large printing and combination, so I recall that myself, seeing that.

Do you have a disk with that writing on it now, Mr. Thigpen?

DEFENDANT THIGPEN: I don't think I do, no.

THE COURT: Take a look if you would, please.

DEFENDANT THIGPEN: When the disk was introduced, Your Honor, it was still in -- where is the case at? It was a Maxell CD. He had it from here. It was in a Maxell CD case.

THE COURT: You know, you can move disks around very quickly, too. We all know that. Take a look at your

other disks.

DEFENDANT THIGPEN: I don't know. I want to speak to Dan for a second.

THE COURT: All right.

DEFENDANT THIGPEN: Your Honor, the defense at this time would like to make a motion to remove the judge under 455.

THE COURT: Which judge?

DEFENDANT THIGPEN: You, Your Honor.

THE COURT: For what reason?

DEFENDANT THIGPEN: For bias.

THE COURT: Well, that's going to be denied.

DEFENDANT THIGPEN: Well, I will have to take it to the chief justice. I have an order right here already drawn up so you can make that order in writing.

THE COURT: Well, you had a chance if you thought I was biased before we started the case a long time ago, you had a chance to make such a motion, and that motion wasn't made.

And you're not going to make it at this time because this is, falls into a pattern that seems to be appropriate here that you're falling into in this case, and that is that you don't want to have this case tried. We're going to try this case.

DEFENDANT THIGPEN: It's not that I don't want --

THE COURT: Let me finish a second. I'm not sure why at this point you would believe that I was biased.

DEFENDANT THIGPEN: For the record, Your Honor, Mr. Wilhelm stood back here with the CD in the cover. You did not see the CD --

THE COURT: No --

DEFENDANT THIGPEN: That makes me think you're biased, Your Honor. He didn't bring it forward to the bench.

THE COURT: Mr. Thigpen, you're not remembering correctly because we spent probably eight or nine minutes up at the side-bar in which the disk that was finally marked as Exhibit Number 4 was handed back and forth to me, because I asked to see it, to you, and by Mr. Wilhelm.

Now, maybe you don't recall that, but I have a very, very clear recollection of that, and I have a clear recollection of seeing writing on the disk. So I want to make sure you have a chance to take a look at what you have in your materials because I know you have a lot of material on your table and see if you have the one that Ms. Hunter says she marked that I recall seeing marked that Mr. Wilhelm believes was marked.

DEFENDANT THIGPEN: So they don't think that I keep messing the disk up or modifying it for some reason --

THE COURT: Don't get into argument about that.

DEFENDANT THIGPEN: I'm not arguing. I'm about to make a suggestion.

THE COURT: Okay.

DEFENDANT THIGPEN: I am not arguing. I do not want to prolong the trial. I want the trial to go on. If they have a copy of the disk like I got their remittance advice in front of you, could they go get the copy of the disk, and I'll put it in the laptop?

THE COURT: Good suggestion. Mr. Wilhelm, do you have another copy of that same disk?

MR. WILHELM: I'll have to ask. I don't know.

THE COURT: Okay.

MR. WILHELM: Yes, Ms. Hunter says we do.

THE WITNESS: Should I go get it?

THE COURT: Yes. Go ahead. I'm going to let you step down. You go ahead and get that.

MR. WILHELM: Your Honor, we have the disk.

THE COURT: You have the disk?

MR. WILHELM: Yes, we have another copy of the --

THE WITNESS: A copy I made his copy from.

THE COURT: Just so it's clear on the record, the copy you have in your hand is another copy of the original disk that you provided Mr. Thigpen?

THE WITNESS: This is the disk from which I made Mr. Thigpen's copy last week.

THE COURT: So this is the original in a sense, the original disk from which you made a copy and gave Mr. Thigpen and marked?

THE WITNESS: Yes, I guess you could say that.

THE COURT: All right. And how do you want to handle it? You know, Mr. Wilhelm, this is your provision of data. How do you want to handle it?

MR. WILHELM: Well, Your Honor, I need to look at this disk as it would appear on the screen because I suspect that the modification dates that Mr. Thigpen has been making such a big deal about on cross-examination do not appear on this disk.

THE COURT: Take a look at it right now. Mr. Thigpen, is it okay if they use your laptop?

DEFENDANT THIGPEN: Yeah. Sure.

THE COURT: Have you got it in that mode?

DEFENDANT THIGPEN: I'll do it, Your Honor.

MR. WILHELM: All right.

DEFENDANT THIGPEN: I don't think you even put it over there yet.

MR. WILHELM: It's up.

DEFENDANT THIGPEN: Nope. Don't do that.

MR. WILHELM: Just like that.

DEFENDANT THIGPEN: It's the same thing.

MR. WILHELM: Close out of it and --

DEFENDANT THIGPEN: Don't tell me what to do.

THE COURT: Hold on, both of you. Don't act like third graders.

MR. WILHELM: Yes, sir. I won't.

DEFENDANT THIGPEN: It will come into Excel, Heidi, is that right?

THE WITNESS: If you could pull up the directory of the disk.

DEFENDANT THIGPEN: Microsoft Excel.

THE WITNESS: Just pull up a directory of the disk of what files are on the disk.

THE COURT: Can't you do that by going to your computer?

DEFENDANT THIGPEN: Yeah.

THE WITNESS: Just looking for modification times.

DEFENDANT THIGPEN: What's the difference between this file and --

THE WITNESS: This doesn't show the modification times.

THE COURT: The last time you did this you went up to your computer and pulled it down as a, I'm not sure of the terminology.

THE WITNESS: He opened my computer and then was able to view the files on the disk.

DEFENDANT THIGPEN: Okay.

THE WITNESS: Okay.

DEFENDANT THIGPEN: That's it.

THE WITNESS: See on this one, modification times have changed.

THE COURT: Are they changed?

DEFENDANT THIGPEN: So you're admitting that you did this at 3:41 a.m.?

THE WITNESS: No. Like I said, that was a SURS file, but I'm saying that he made a big deal about files at 5:00 a.m. and stuff, and that's not the real file time.

DEFENDANT THIGPEN: This ain't a real file time at 3:41 a.m.?

THE WITNESS: Like I said during the testimony, it was a SURS created file, so I can't tell you. I can't tell you more than that. It wasn't a file I created.

THE COURT: Do you agree, Mr. Thigpen, just for the purposes -- hang on. Let me finish -- for the purposes of the controversy we're now dealing with that the modified time and date number is different on this particular CD than it was on the one you were using?

DEFENDANT THIGPEN: I stated that on the record. I thought that was the CD that they had given me.

THE COURT: I understand. That's not the question I asked you.

DEFENDANT THIGPEN: Yes. It is a different disk, yes.

THE COURT: So I'm not sure how important any of this is to anything except to make sure that at least we have the right CD that Mr. Wilhelm had not lodged an objection to, and so I think that up to now, Mr. Wilhelm, did you note, was any of the data that was being shown from that CD different than what you thought it should be?

MR. WILHELM: The only thing that I noticed was the modification times and dates are different, Your Honor, on this disk.

THE COURT: What else do you want to show from that CD, Mr. Thigpen?

DEFENDANT THIGPEN: I wanted to go into other things, how she claims that it is not her -- that it's a SURS file. It's clearly her file, and that's why I wanted to go into more detail with the disk. It has been modified over 24 times.

And you could easily go back and change that modification date. That was done, and then last week she went back and changed it, and I guess she forgot to take one of the times off, because it's 3:41 a.m. in there.

THE COURT: Now you're making argument. What I am asking you is, was what else do you want the use the disk for, other than to show modification times, which we

now have a controversy over. Other than to show that, is there anything else you wanted to use the disk for? That's what I'm asking.

DEFENDANT THIGPEN: TCN, transaction control numbers and see if the data lines up with her spread sheets.

THE COURT: All right. That's fair. Anything else? What I really want to do is to have Mr. Wilhelm confident and feel that he has not been betrayed by someone that the disk is a different disk, and I want him to be able to know what it is you're going to show so that he can then think about what those numbers are.

DEFENDANT THIGPEN: If that's their disk they gave me so I thought it was this that they gave me before. It's the same data.

THE COURT: Don't want that. All I want is what you want to use the disk for. You've already given us two things. Is there anything else?

DEFENDANT THIGPEN: I also want to use the disk to show the time that it was retrieved.

THE COURT: That's the same modification or different?

DEFENDANT THIGPEN: Different. If you look on the CD, it shows a time when they actually pulled up the information.

THE COURT: Okay.

DEFENDANT THIGPEN: For instance, on this one here, 7/3/01, 11:53 at the actual date and time.

THE COURT: That they retrieved the data?

DEFENDANT THIGPEN: Yeah, that they pulled it, whoever did.

THE COURT: Okay. Anything else?

DEFENDANT THIGPEN: No.

THE COURT: Why don't you just leave that in there so Mr. Wilhelm knows there is not going to be any change, and you know there is not going to be a change. Are we ready to have the jury come back?

MR. WILHELM: Yes, Your Honor, just one thing. I think we're entitled to an instruction on why the modification times are different on the one they are seeing now than what they saw before.

DEFENDANT THIGPEN: Well, the reason why it was modified is because it was modified.

THE COURT: I'll tell you what I'm going to say. Mr. Thigpen, I am just going to say this, that the reason we've been sitting out here and working when the jury wasn't here is because there was a controversy over the identity of the disk that was being used and the modification times that were shown on that disk and that we have now resolved that controversy by substituting a disk

that the government now believes is the appropriate time -- appropriate disk with different modification times on it and let the jury draw its own conclusion.

I'm not going to give it any conclusion whatsoever or tell it what it ought to think about that. I'm just going to tell them what has happened out here, and that's it. Okay? Why don't you go ahead and bring them in?

DEFENDANT THIGPEN: Your Honor, I have one more thing. I have made this comment to you before about being threatened. I was threatened again by Mr. Wilhelm. I told the marshals about it, and they did nothing about it. I am tired of being threatened. I have rights, too.

THE COURT: I understand, Mr. Thigpen. Should I have the marshals take the stand and testify as to what happened here or not? I wasn't here. I don't know.

DEFENDANT THIGPEN: Yes, they could tell you that I was cursed at, and I'm tired of being cursed at.

THE COURT: Okay. We will do that later.

(In open court with the Jury present.)

THE COURT: Do you want to take your seats. I'm sorry there was a delay, but probably, Members of the Jury, you can understand that there have been some controversies that have come up in this case off and on in your presence. One came up out of your presence which we have now

resolved.

I have to tell you that the fact is this: A controversy came up about whether the disk, the CD that was actually being viewed from the computer by Mr. Thigpen and had been used in some of the questioning of Ms. Hunter, there was a controversy over whether that was the same disk that the government had given Mr. Thigpen.

And you should know that that side-bar, there was a discussion about this, and that Mr. Wilhelm said that if it's the same CD that we gave you, I have no objection, at which point I indicated to you that there was no objection, and we received Defendant's Exhibit 4, if you recall that.

It turns out, apparently, that there is a difference, and Ms. Hunter indicated that she thought it was not the same CD, and there was some question about it, so we went through. We had a very short hearing while you were out of the courtroom and determined that there is a difference between the CD that was given to Mr. Thigpen and the one that was being viewed by you, especially, at least up to now, the known difference is in those dates of modification, date and time or modification over which there was quite a bit of testimony.

Those are different in the one that is now launched in the computer, which is now Ms. Hunter I think will testify is a copy or the original of the one that she

gave a copy to Mr. Thigpen.

So that's what has gone on while you were out of the courtroom, and I don't want you to assume from anything I say one thing or the other. You can make up your own minds based on those facts.

Why don't you go ahead, Mr. Thigpen, and continue? Is this from, do you want the jury to see this?

DEFENDANT THIGPEN: Yeah, they can see that. I'm going to go back to the formal one.

THE COURT: Actually, this is a different number.

DEFENDANT THIGPEN: There you go. They can see that.

NOT ENTERED IN EVidinece

BY DEFENDANT THIGPEN:

Q. So if that was the wrong disk that was given to the defense and Paul Xiong no longer works at the Department of Human Services as Ron Nail had stated, who did this last week?

A. Who did this file or --

Q. I think it is September 14th, 2000, 3:41 a.m.?

A. Yes, Paul Xiong did that file for me.

Q. At 3:41 a.m. in the morning?

A. I don't know. He created the file. I can't speak to when he created it.

Q. Are you familiar with this, these (indicating)?

A. Yes.