ed *ex parte*, but only, as the parties agreed, after those six employees have received checks in settlement of their claims against MCC.[19] The court concludes that the remaining twelve current employees at issue in this discovery dispute are all ones who could potentially impute liability to Terra for inappropriate operations or maintenance of the Port Neal plant, thus potentially establishing MCC's principal defense to Terra's claims. Therefore, no *ex parte* contacts with those twelve current employees, nor with any other current employees of Terra, may be made by MCC in this case.

IT IS SO ORDERED.

KEY NUMBER SYSTEM

UNITED STATES of America, Plaintiff,

v.

David R. BROWN, Defendant.

Criminal No. 4–94–95.

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 11, 1996.

Defendant moved for judgment of acquittal or new trial on charges of violating Medicaid/Medicare Anti-Kickback statute on grounds that alleged juror misconduct violated defendant's Sixth Amendment right to trial by impartial jury. The District Court, Doty, J., held that: (1) defendant did not waive right to new trial, despite knowledge that extrinsic material had been introduced during jury deliberations; (2) jury's consideration of extrinsic information that codefendant pled guilty and agreed to pay large fine was prejudicial; and (3) juror misrepresentations during voir dire deprived defendant of trial by impartial jury.

Granted in part and denied in part.

1. Criminal Law ⟹753.2(4, 5)

Motion for judgment of acquittal challenges sufficiency of evidence; court takes evidence in light most favorable to government and gives government benefit of all reasonable inferences that may logically be drawn from evidence and verdict may not be disregarded if there is substantial evidence justifying inference of guilt. Fed.Rules Cr.Proc.Rule 29, 18 U.S.C.A.

2. Criminal Law ⟹753.2(6)

Verdict may be reversed on motion for judgment of acquittal only if evidence is such that reasonable jury must have entertained reasonable doubt as to government's proof of one of essential elements of offense. Fed.Rules Cr.Proc.Rule 29, 18 U.S.C.A.

3. Criminal Law ⟹935(1)

New trial should be granted only to prevent injustice or when verdict strongly conflicts with great weight of evidence; trial court is not free to set aside verdict merely because it would have ruled differently or believes jury should have drawn different inferences and conclusions from conflicting testimony. Fed.Rules Cr.Proc.Rule 33, 18 U.S.C.A.

4. Criminal Law ⟹913(1)

Standard for granting new trial is simply one which measures result in terms of whether miscarriage of justice has occurred. Fed.Rules Cr.Proc.Rule 33, 18 U.S.C.A.

5. Criminal Law ⟹959

Scope of proceedings needed to determine existence, nature and extent of alleged jury misconduct lies within discretion of trial court.

6. Criminal Law ⟹956(11)

In determining whether juror misconduct occurred and whether such misconduct warrants new trial, court may only consider evidence regarding extraneous outside influence and information, and may not consider subjective effects of such influence and information. Fed.Rules Evid.Rule 606(b), 28 U.S.C.A.

7. Criminal Law ⟹931

Jury misconduct known to defendant or counsel that is not called to attention of court before return of verdict cannot be ground for new trial.

8. Criminal Law ⟹931

Defendant's right to new trial based on introduction of extrinsic materials into jury room was not waived, even though defendant failed to seek mistrial when informed of misconduct before verdict was returned, given that it was not until postverdict voir dire that it became known that jury's consideration of extrinsic information affected verdict.

9. Criminal Law ⟹932

Trial court retains discretion to determine whether jury's misconduct prejudiced defendant when jury is exposed to extraneous information that does not relate to factual issues or supplement court's legal instructions.

10. Criminal Law ⟹956(13)

Jurors' exposure to extrinsic information relating to facts of case are presumptively prejudicial, placing burden on government to establish beyond reasonable doubt that extrinsic evidence was harmless to defendant.

11. Criminal Law ⟹956(12)

When considering whether government has rebutted presumption of prejudice from jurors' exposure to its extrinsic evidence relating to facts of case, court considers probable effect of allegedly prejudicial information on hypothetical average juror to determine whether intrusion affected jury's deliberations and verdict.

12. Criminal Law ⟹855(1)

Extrinsic information concerning codefendant's guilty plea and agreement to pay large fine during jury deliberations in prosecution for violating Medicaid/Medicare Anti-Kickback statute was prejudicial given that extrinsic information was received by jury through one juror's oral statement, was available to jury during entire deliberation, was discussed and considered extensively by jury, and was material to primary factual issue of whether defendant solicited or received kickbacks. Social Security Act, § 1128(b), as amended, 42 U.S.C.A. § 1320a–7(b).

13. Criminal Law ⟹956(12)

In determining whether government has overcome presumption of prejudice that attaches when jury is exposed to extraneous factual material, relevant considerations include whether extrinsic evidence: was received by jury and manner in which it was received; was available to jury for lengthy period of time; was discussed and considered extensively by jury; was introduced before verdict was reached; and was reasonably likely to affect verdict, considering strength of government's case.

14. Criminal Law ⟹956(12)

Communication of extra-record factual material to one juror is sufficient to trigger presumption of prejudice, even if other jurors were not exposed to extrinsic information.

15. Criminal Law ⟹923(1)

To obtain new trial based on juror responses during voir dire, party must first demonstrate that juror failed to answer honestly material question on voir dire, and that correct response would have provided valid basis for challenge for cause; juror's failure to respond honestly is presumed to be indication of bias.

16. Criminal Law ⟹923(1)

New trial on charges of violating Medicaid/Medicare Anti-Kickback statute was warranted based on juror's misrepresentations during voir dire, denying knowledge of codefendant's guilty plea and agreement to pay a large fine, and given jurors' disregard of repeated instructions limiting information which could be considered to evidence admitted during trial; bias by jurors denied defendant fair trial by impartial jury. U.S.C.A. Const.Amend. 6; Social Security Act, § 1128(b), as amended, 42 U.S.C.A. § 1320a–7b(b).

19. In addition, the parties have agreed to the conditions under which now-former employee Mr. Romig may be contacted, and the court confirms those conditions here.



SCANNED
OCT 24 2005
U.S. DISTRICT COURT ST. PAUL

EXHIBIT #4

17. **Criminal Law** ⟹633(1)

Criminal defendant is entitled only to a fair trial, not a perfect one. U.S.C.A. Const. Amend. 6.

18. **Criminal Law** ⟹925(1)

New trial may be warranted when criminal defendant may have been deprived of Sixth Amendment right to trial by impartial jury. U.S.C.A. Const.Amend. 6.

---

David L. Lillehaug, United States Attorney, Janet A. Newberg, Assistant United States Attorney, and David B. Orbuch, Special Assistant United States Attorney, Minneapolis, MN, for plaintiff.

Joseph J. Duffy, Kevin D. Evans, and Schiff, Hardin & Waite, Chicago, IL, for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court upon the motion of defendant David R. Brown ("Brown") for judgment of acquittal or, in the alternative, a new trial. Defendant contends that the verdict is contrary to the great weight of the evidence and should be set aside in the interest of justice, juror misconduct violated his Sixth Amendment right to trial by an impartial jury and that the jury was exposed to prejudicial extrinsic information which also deprived him of his Sixth Amendment rights. Based upon a review of the file, record and proceedings herein, and for the reasons stated below and at oral argument, the court grants defendant's motion for a new trial on Counts 13 and 17 of the redacted second superseding indictment based on juror misconduct and the jury's exposure to extrinsic information, but denies defendant's motion for judgment of acquittal or a new trial based on the sufficiency of the evidence.[1]

## BACKGROUND

[1–4] Brown was charged in 39 counts of a 68 count second superseding indictment. The court presided over defendant's twelve week jury trial between August 1 and October 19, 1995. The court granted Brown's motion for judgment of acquittal as to twelve counts with which he was charged and severed eight other counts on October 3, 1995.[2] On the same day, the court granted motions for judgment of acquittal of Brown's four co-defendants, Mieszala, Herring, Geil and Jennings in their entirety.

The proceedings and trial of Brown and his co-defendants received significant local and national media coverage throughout their pendency. Following the events of October 3, 1995, and the publication of an article by the Minneapolis Star Tribune on Wednesday, October 4, 1995, which discussed the co-defendants' acquittals and Caremark's pre-trial plea of guilty and payment of a large fine, the court and Brown's counsel were justifiably concerned that the jury might have been exposed to extrinsic information. Accordingly, the court conducted a limited voir dire of the jurors as a panel and individually on October 10, 1995. In the courtroom, the court asked the 15 member jury panel "Has anybody in the panel here seen or heard anything about this case outside of the courtroom and not within the courthouse? Anybody read, seen, or heard anything?" 10/10/95 Tr. at 12. Some jurors raised their hands.

During the court's individual voir dire in chambers, juror Ulmen was asked: "Did you see anything outside the courthouse, or courtroom, about this case, over the last week or so?" 10/10/95 Tr. at 32. Juror Ulmen responded that he had not heard or seen anything regarding the case "[o]ther than that the defendants were let go—or—things were decided on the other four defendants." 10/10/95 Tr. at 33. Juror Ulmen also stated that he learned of the acquittals from the reaction of the four co-defendants as they exited the courtroom on October 3, 1995, while he was in a courthouse hallway during a recess. *Id.*

Juror Asphaug was one of the jurors who had raised his hand during the court's questioning of the panel. In chambers, the court asked juror Asphaug "to tell us whatever it was you saw or heard and the circumstances surrounding it?" *Id.* He stated that friends and neighbors had told him about the acquittal of the four co-defendants, but he claimed he had not learned anything more about the case outside the courtroom. *Id.* at 36–37.

Following the individual voir dire, the court gave a limiting instruction in open court concerning the judgment of acquittal of the co-defendants, the judgment of acquittal on twelve of the thirty-nine counts against Brown, and the severance of eight other counts against the defendant. 10/10/95 Tr. at 53–55. On October 11, 1995, following closing arguments of counsel, alternate jurors Davis, White and Hesse were dismissed and the case was submitted to the jury. None of the three alternates had expressed any knowledge concerning Caremark's plea of guilty or payment of a fine during the October 10, 1995 voir dire.

The jury began deliberations on Thursday, October 12, 1995. On Monday, October 16, 1995, the court received a note from juror Dickinson which stated:

> Judge Doty, I am concerned about information that has come to the jury but was not part of the evidence. On Thursday, October 12, when [Juror Asphaug] was asked to comment, he stated that "[Juror Ulmen] and I have information that the rest of you do not have." He went on to say that "Care mark [sic] was found guilty of this same crime and paid a fine of $367,000,000." [Juror Shelley] quickly stated that she did not want this information and did not wish to hear any more.... At the end of the day on Friday I saw this same information affect another discussion.

10/16/95 Tr. at 6.

After receiving this note, the court did not voir dire any of the jurors. The court did, however, convene a hearing with counsel for Brown and the government to discuss an instruction the court proposed be sent back to the jury. This colloquy ensued in chambers:

> The Court: Just so it is clear on the record at this point: I have propounded this instruction (indicating) or note back to the jury for this morning—that has been read to counsel, I believe—and it would read like this:
>
> > The court has learned that discussions concerning defendants that are no longer in this case have occurred during jury deliberations. Please remember the court's instruction that you are not to consider in your deliberations on this defendant anything that may have occurred outside of the courtroom regarding other defendants. In this regard you should be governed by the same principle as stated in Instruction Number Three.
>
> And just so it is clear on the record, Instruction Number Three dealt with the four defendants that had been removed

1. Under Fed.R.Crim.P. 29, a motion for a judgment of acquittal challenges the sufficiency of the evidence. The court takes the evidence in the light most favorable to the government and gives the government the benefit of all reasonable inferences that may logically be drawn from the evidence. A verdict may not be disregarded if there is substantial evidence justifying an inference of guilt. *United States v. Lincoln,* 630 F.2d 1313, 1316–17 (8th Cir.1980). A verdict may be reversed only if the evidence is such that a reasonable jury must have entertained a reasonable doubt as to the government's proof of one of the essential elements of the offense. *United States v. Yerks,* 918 F.2d 1371, 1374 (8th Cir.1990).

   Similarly, under Fed.R.Crim.P. 33 defendant moves for a new trial asserting that the "the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." *United States v. Brown,* 956 F.2d 782, 786 (8th Cir.1992). While the standard for granting a new trial is less stringent than for judgment of acquittal, a new trial should be granted only to prevent an injustice or when the verdict strongly conflicts with the great weight of the evidence. The court is not free to set aside a verdict merely because it would have ruled differently, or believes that the jury should have drawn different inferences and conclusions from conflicting testimony. The true standard for granting a new trial is simply one which measures the result in terms of whether a miscarriage of justice has occurred.

2. The remaining nineteen counts charged Brown with violating the Medicaid/Medicare Anti-Kickback Statute, 42 U.S.C. § 1320a–7b(b). Of the nineteen remaining counts in the redacted second superseding indictment, the jury found defendant guilty on Counts 13 and 17; defendant was found not guilty on Counts 1–12, 14–16 and 18–19.

from the case after the jury had known about them.

10/16/95 Tr. at 6–7.

Defendant's counsel, Mr. Duffy, objected to the court's proposed instruction and stated:

> When we talk about defendants, we talk about the original five who started this case, and we have given them instructions on those people, and it is clear that they are not talking about those people. They are talking about a company.... [B]ut what is most troubling is that they are talking about Caremark, which is not before them and shouldn't be before them in any form or fashion.

10/16/95 Tr. at 8–9.

> The Court: What would you suggest that the court ought to do, as long as you have objected to the proposal that the court has made?

10/16/95 Tr. at 9.

. . . . .

> Mr. Duffy: Judge, we referenced the last part of Instruction Four. You can read this here,
>
> The court has learned that discussions concerning matters that are not part of this case have occurred during jury deliberations. Please remember the court's instructions that you are not to consider in your deliberations on this defendant anything that may have occurred outside the courtroom. Such matters are not proper evidence and must be entirely disregarded. Your verdict must be based only on the evidence in this case.
>
> And this language comes right out of Instruction Four.

10/16/95 Tr. at 13.

> The Court: Right. Is that okay with you folks?

. . . . .

> Mr. Orbuch: The government doesn't have any objection to that.

10/16/95 Tr. at 14.

. . . . .

> Mr. Duffy: This is a tough one, Judge. That's why it took us so long. [Brown] would like to have you read that instruction (indicating) to the jury.

. . . . .

> Mr. Duffy: Oh, no. No. I do apologize. The issue we brought up with [Brown] was the issue of the possibility of a mistrial and other things, and it's having the court send that note back to them.

Following this discussion, the court did send the jury the instruction all counsel had approved.

On October 19, 1995, three days after the court received juror Dickinson's note, the jury returned its verdict and found Brown guilty on Counts 13 and 17. After the verdict was published, Mr. Duffy requested the court again voir dire each of the jurors in chambers concerning external information the jury may have considered during their deliberations. Over the government's objection, the court agreed to conduct a limited inquiry.

Questioning juror Shelley, the court asked "[W]as there any information brought to you during you deliberations that was not presented to you in the courtroom as evidence[?]" 10/19/95 Tr. at 53. Juror Shelley responded, "Yes." *Id.* This juror further stated that the extrinsic information presented was "[t]hat Caremark paid fines" and that this information may have affected deliberations. *Id.* Additionally, juror Dickinson stated that the information he referred to in his October 16, 1995, note affected deliberations. 10/19/95 Tr. at 58.

## DISCUSSION

Brown contends that he is entitled to a new trial based on alleged juror misconduct and the jury's exposure to prejudicial extrinsic information. Based on juror Dickinson's note and the court's post-trial voir dire, defendant contends that certain jurors misrepresented their knowledge of extrinsic evidence to the court and the jury improperly considered this extrinsic evidence. Specifically, Brown claims that members of the jury misrepresented that they had not seen or heard any extraneous information concerning



Caremark's pretrial plea of guilty which the court had excluded from evidence during the trial and communicated this information to the rest of the jury during deliberations.

The government argues that by proceeding to verdict after Brown became aware of juror Dickinson's note he waived his right to a new trial. Alternatively, the government contends that Brown has failed to prove any jury misconduct and any prejudice to the defendant caused by the jury's consideration of extrinsic material was harmless.

### 1. Extrinsic Evidence

[5] The scope of the proceedings necessary to determine the existence, nature and extent of alleged jury misconduct lies within the discretion of the court. The court directed all of the jurors to appear individually in chambers to answer a limited number of questions posed by the court after they had returned a verdict. The court's discretion in conducting this inquiry, however, was confined by Rule 606(b) of the Federal Rules of Evidence. Rule 606(b) provides:

> [A] juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent or dissent from the verdict ... or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

[6] Rule 606(b) draws a clear line "between admissible testimony regarding extraneous outside influences and information, and inadmissible testimony regarding the subjective effects of such influences and information." *United States v. Maree*, 934 F.2d 196, 201 (9th Cir.1991). In determining whether juror misconduct occurred and whether such misconduct warrants a new trial, a court may only consider evidence admissible under Rule 606(b).

As a threshold matter, the government argues that Brown waived his right to a new trial based on the introduction of extrinsic material during jury deliberations because he decided to forego a mistrial and proceed to verdict although fully aware that information concerning Caremark had been considered by the jury on October 16, 1995. The court disagrees.

[7] The Eight Circuit adheres to a general rule that jury misconduct known to the defendant or his counsel and not called to the attention of the court before the return of the verdict cannot be a ground for a new trial. *United States v. Hoelscher*, 914 F.2d 1527, 1543 (8th Cir.1990), *cert. denied*, 498 U.S. 1090, 111 S.Ct. 971, 112 L.Ed.2d 1057 (1991), *and cert. denied*, 500 U.S. 943, 111 S.Ct. 2240, 114 L.Ed.2d 482 (1991). The court first informed Brown of juror Dickinson's note on October 16, 1995, three days before the verdict was returned. Neither Brown nor his counsel attempted to hide the fact that extrinsic materials had been injected into the jury room. Thus, the facts of this case do not present the limited circumstances where the Eighth Circuit has found a defendant waived his right to a new trial based on juror misconduct.

The government states correctly that "[a] jury is presumed to follow the instructions given to it by the court", *United States v. Goodner Bros. Aircraft, Inc.*, 966 F.2d 380, 384 (8th Cir.1992), *cert. denied*, 506 U.S. 1049, 113 S.Ct. 967, 122 L.Ed.2d 123 (1993) (citing *Greer v. Miller*, 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 3109 n. 8, 97 L.Ed.2d 618 (1987)). Even assuming that defendant waived his right to a new trial by not asking for a mistrial on October 16, 1995, that decision necessarily rested on the belief that the jury would follow the court's instructions and consider only the evidence presented in court during the trial. In this case, however, the court need not presume that its instructions were followed because the post-verdict inquiry indicated that the jury did not follow the court's instructions.

[8] To conclude that Brown waived his right to a new trial by not asking for a mistrial on October 16, 1995, is to say that on October 16, 1995, not only did he waive his right to a new trial based on juror misconduct prior to that date, he also waived his

right to a new trial based on juror misconduct after October 16, 1995. It was not known until the voir dire on October 19, 1995, that, even after the court gave a limiting instruction on October 16, 1995, the jury's consideration of extrinsic information affected their verdict.[3] Thus, the court finds that Brown did not waive his right to a new trial.

[9] To overturn a verdict based on jury misconduct, however, Brown must "(1) produce evidence which is not barred by the rule of juror incompetency and (2) produce sufficient evidence to prove grounds recognized as adequate to overturn the verdict." *United States v. Krall*, 835 F.2d 711, 715 (8th Cir.1987). "'The touchstone of decision in cases involving extra-record evidence is not the mere fact of infiltration of some molecules of extra-record matter ... but the nature of what had been infiltrated and the probability of prejudice.'" *United States v. Estrada*, 45 F.3d 1215, 1225 (8th Cir.1995), *vacated on other grounds*, — U.S. —, 116 S.Ct. 664, 133 L.Ed.2d 516 (1995) (citation omitted). If the jury is exposed to extraneous information that does not relate to factual issues or supplements the court's legal instructions, it remains within the province of the court to determine whether the jury's conduct prejudiced the defendant. *Id.* at 1226.

[10, 11] The court applies a different standard, however, if the extraneous information relates to factual evidence not presented at trial: such information is considered presumptively prejudicial. *Id.* (citing *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954)). Extrinsic information that relates to the facts of a case are presumptively prejudicial "because the jury is the final arbiter of factual disputes." *United States v. Cheyenne*, 855 F.2d 566, 568 (8th Cir.1988). This presumption is not conclusive, but the burden rests on the government to establish beyond a reasonable doubt that the extraneous evidence was harmless to the defendant. *United States v. Blumeyer*, 62 F.3d 1013, 1016–17 (8th Cir. 1995). In considering whether the government has rebutted the presumption of prejudice, the court considers the "probable effect of the allegedly prejudicial information on a hypothetical average juror." *United States v. Console*, 13 F.3d 641, 666 (3d Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1660, 128 L.Ed.2d 377 (1994), *and cert. denied*, — U.S. —, 115 S.Ct. 64, 130 L.Ed.2d 21 (1994); *see also Blumeyer*, 62 F.3d at 1017. The ultimate inquiry is "Did the intrusion affect the jury's deliberations and thereby its verdict?" *United States v. Olano*, 507 U.S. 725, —, 113 S.Ct. 1770, 1780, 123 L.Ed.2d 508 (1993).

[12] Based on a review of the admissible evidence in the record, the court finds that the jury improperly considered extrinsic factual material bearing on the defendant and acts alleged in the indictment. Juror Dickinson's October 16, 1995, note stated that juror Asphaug had stated during deliberations that "Care mark [sic] was found guilty of this same crime and paid a $367,000,000 fine." 10/16/95 Tr. at 6. There was no evidence presented at trial concerning either Caremark's pretrial guilty plea or the fact that it had paid any fine. Moreover, the note also states that juror Dickinson knew that no such evidence was presented at trial. In fact, Caremark's plea was the subject of a motion in limine by Brown and his co-defendants and the court excluded this evidence from being presented at trial. Having reviewed the record, the court finds that the jury was exposed to extraneous factual information not developed at trial and this information was therefore presumptively prejudicial.

[13] The court employs an objective test in determining whether the government has overcome the presumption of prejudice that attaches when the jury is exposed to extraneous factual material. *Blumeyer*, 62 F.3d at 1017. The relevant considerations include: (1) whether the extrinsic evidence was received by the jury and the manner in which it was received; (2) whether it was available to

3. The Supreme Court has stated that "Cases may arise in which the risk of prejudice inhering in material put before the jury may be so great that even a limiting instruction will not adequately protect a criminal defendant's constitutional rights." *Francis v. Franklin*, 471 U.S. 307, 324 n. 9, 105 S.Ct. 1965, 1976 n. 9, 85 L.Ed.2d 344 (1985).



the jury for a lengthy period of time; (3) whether it was discussed and considered extensively by the jury; (4) whether it was introduced before a verdict was reached and, if so, at what point during the deliberations was it introduced; and (5) whether it was reasonably likely to affect the verdict, considering the strength of the government's case and whether it out weighed any possible prejudice caused by the extrinsic evidence.[4] *Id.*

The first factor the court must consider is "whether the extrinsic information was received by the jury and the manner in which it was received." *Blumeyer*, 62 F.3d at 1017. Juror Dickinson's note and the October 19, 1995, post-verdict voir dire indicate that extrinsic information concerning Caremark's guilty plea and payment of a fine was received by the jury through juror Asphaug's oral statement when he was asked for his comments. 10/16/95 Tr. at 6; 10/19/95 Tr. at 53–54 (juror Shelley), 57–58 (juror Dickinson).

The second factor to consider is whether the extrinsic information "was available to the jury for a lengthy period of time." *Id.* Again, juror Dickinson's note indicates that the jury received the information relating to Caremark on October 12, 1995, the first day of deliberations. Thus, the extrinsic information was available to the jury during its entire six day deliberation.

[14] Next, the court must determine whether the extrinsic information was "discussed and considered extensively by the jury." *Id.* According to juror Dickinson's note, on Thursday, October 12, 1995, "when [juror Asphaug] was asked to comment he stated that [juror Ulmen] and I have information the rest of you do not have ... Care mark [sic] was found guilty of this same crime and paid a fine of $367,000,00." 10/16/95 Tr. at 6. Juror Dickinson's note also states that "At the end of the day on Friday [October 13] I saw this same information affect another discussion." 10/16/95 Tr. at 4. During the post-verdict voir dire, both jurors Dickinson and Shelley confirmed that this specific information was discussed and considered extensively enough to have affected deliberations and the verdict. 10/19/95 Tr. at 53–54, 57–58. It is reasonable to infer that the entire jury heard and considered this statement because when juror Asphaug made this statement he was being asked to comment. Even if all the jurors were not exposed to the extrinsic information, the communication of extra-record factual material to even one juror is sufficient to trigger the presumption of prejudice. *United States v. Delaney*, 732 F.2d 639, 643 (8th Cir.1984). Based on the record, the court find that the extrinsic information was discussed and considered extensively by the jury.

The fourth factor to consider is whether the extrinsic information "was introduced before a verdict was reached and, if so, the point during deliberations when the information was introduced." *Blumeyer*, 62 F.3d at 1017. Juror Dickinson's note indicates that the information concerning Caremark was introduced on October 12, 1995, the first day of deliberations. 10/16/95 Tr. at 4.

Finally, the court must determine whether the extrinsic information was "reasonably likely" to affect the verdict. In making this determination, the court consider's "the strength of the government's case and whether it outweighed any possible prejudice caused by the extrinsic evidence." *Id.* Initially, the court notes that at the outset of deliberations the jury was exposed to information so prejudicial the court ruled that it could not be offered as evidence. 8/10/95 Tr. at 277. The fact that the information concerning Caremark was communicated to the jury as second-hand news accounts does not lessen its prejudicial character. As the Eighth Circuit has stated "[t]he prejudice to [a] defendant is almost certain to be as great when that evidence reaches the jury through news accounts as when it is part of the prosecution's evidence[.]" *Osborne v. United States*, 351 F.2d 111, 117 (8th Cir.1965).

The nature of prejudicial error varies with the nature of the extrinsic information. Ju-

4. Although the scope of the court's questioning of the jury on October 19, 1995, may have exceeded that which is allowed under Rule 606(b) and the test defined in *Blumeyer*, the court bases its decision on Brown's motion for a new trial only on evidence admissible under Rule 606(b).

ror Asphaug's comments to the jury that "Care mark [sic] was found guilty of this same crime" and that Caremark paid a multimillion dollar fine were highly prejudicial and it is reasonably likely that this information affected the verdict. This information was material to Brown's guilt or innocence and concerned the primary factual issue before the jury, whether Brown had solicited or received kick-backs in violation of 42 U.S.C. § 1320a–7b(b). The jury may have reasonably inferred that if Caremark, the payor of the charged conduct was found guilty of paying kickbacks, the payee, Brown, must be guilty of soliciting or receiving some kickbacks.

The court recognizes that the strength of the government's case has a bearing on overcoming the presumption of prejudice and it previously has addressed the sufficiency of the evidence. *See* supra note 1.[5] As demonstrated by the court's acquittal of all of the Caremark and Genentech employees pursuant to their Rule 29 motions, the government did not present sufficient evidence such that a reasonable jury could find these defendants guilty beyond a reasonable doubt. Moreover, as the court stated on October 3, 1995, the government's case against Brown was not overwhelming. *See* 10/3/95 Tr. at 16.

The jury's apparent inconsistent verdict further demonstrates that the government's case against Brown was not overwhelming. The jury convicted Brown on Count 13, which alleged the illegal receipt of $15,000 from Managed Care Initiatives under a January 1, 1992, Marketing Agreement between Caremark and ABC. Ex. 379. The jury acquitted Brown on Counts 11, 12, and 14, each of which alleged the receipt of identical quarterly payments under the same Marketing Agreement. Similarly, the jury convicted Brown on Count 17, which alleged the illegal receipt of a 1992 research payment from Caremark, but acquitted him on Counts 1, 2, 3, 4, 6, and 9 which alleged he had received the same level of research funding in 1990 and 1991.

Before reaching its verdict the jury deliberated six full days. On October 17, 1995, the jury sent a note to the court stating that they were unable to a reach unanimous verdict on "some" of the counts against Brown but could return a partial verdict. 10/17/95 Tr. at 16. This note indicates that this case was a close and difficult one for the jury. This note, coupled with the jury's acquittal of Brown on seventeen of nineteen counts and the jury's consideration of the extrinsic information, suggests that the verdict on Counts 13 and 17 may have been a compromise.

The court has considered the relevant factors and evaluated the effect of the alleged extraneous information on the jury. The record indicates that extrinsic information concerning Caremark was communicated to the jurors and that it is reasonably likely that this information affected their deliberations and thereby their verdict. Accordingly, the information was not harmless. Based on its observations of the jurors and its familiarity with the issues at trial, the court is convinced that the extrinsic information alleged in this case had a prejudicial effect on the jury and finds that the government has failed to overcome this presumption by proving that the information was harmless beyond a reasonable doubt.

**2. Juror Misrepresentations During Voir Dire**

[15] To obtain a new trial based upon juror responses during voir dire "a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough*

5. The court sees no inconsistency between its ruling on the sufficiency of the evidence and the prejudicial effect of the extrinsic information. Although it is possible that Brown suffered no harm by reason of the extrinsic material being before the jury it is also possible that "'it could and it might have been used effectively in persuading jurors otherwise doubtful or opposed to conviction to agree to a verdict favorable to the government ... [a]nd it is sufficient to require a reversal if, ..., the error might have operated to the substantial injury of the defendant.'" *Osborne,* 351 F.2d at 118 (citations omitted). When the jury considers extrinsic factual information the verdict is presumptively tainted and the government must rebut this presumption by showing that the information was harmless. In this case, the government has simply not rebutted this presumption beyond a reasonable doubt.



*Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984). There is a presumption that a juror's failure to respond honestly is indicative of bias.

[16] Brown argues that jurors Asphaug and Ulmen misrepresented their knowledge of information relating to Caremark during questioning on October 10 and October 19, 1995, and based on their misrepresentations, he was denied his Sixth Amendment right to a trial by an impartial jury. The government contends that Brown has failed to prove that any juror misconduct occurred during the October 10, 1995, voir dire.

It is unclear when jurors Asphaug and Ulmen learned of the information concerning Caremark and the full scope of their knowledge. From juror Dickinson's note, however, we know that at the latest they knew of the information on October 12, 1995, and what information they related to the jury. The materiality of the court's question on October 10, 1995, is demonstrated by the fact that Caremark's pre-trial plea was the subject of a motion in limine by Brown and his co-defendants and was excluded from being presented at trial. If jurors Asphaug and Ulmen knew the information described in juror Dickinson's note and failed to reveal this on October 10, 1995, Brown was deprived of the opportunity to make a challenge for cause. Had these jurors disclosed that they knew Caremark had pleaded guilty and paid a substantial fine, the court might have replaced them based on that information alone, or might have asked follow-up questions.

The court believes that, based upon its post-verdict voir dire on October 19, 1995, juror misconduct did occur on October 10, 1995, and reflects an impermissible partiality on the part of jurors Asphaug and Ulmen. Juror Asphaug and Ulmen's lack of impartiality is further demonstrated by their disregard of the court's repeated instructions. The court: (1) instructed the jury on a daily basis not to read or listen to anything or talk to anyone outside the courtroom about the case; (2) instructed the jury specifically after the voir dire on October 10, 1995, that they could only rely on the evidence received in reaching their verdict; (3) instructed the jury at the conclusion of the case that "it would be a violation of you sworn duty, as judges of the facts, to base your verdict upon anything but the evidence received in this case" (Instruction No. 1).[6] After these repeated admonitions, not only did jurors Asphaug and Ulmen apparently discuss the extrinsic information concerning Caremark among themselves, they communicated this information to the rest of the jury at the very outset of deliberations.

[17, 18] A defendant is entitled only to a fair trial, not a perfect one. *Lutwak v. United States,* 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953). A new trial may be warranted, however, where a defendant has or may have been deprived of his Sixth Amendment right to trial by an impartial jury. *See United States v. St. Clair,* 855 F.2d 518, 523 (8th Cir.1988). In this case, Brown was denied his Sixth Amendment right to trial by an impartial jury.

## CONCLUSION

Bearing in mind the court's justified reluctance to interfere with the jury process, it is compelled to proceed with caution in this area. Here, however, grounds exist for setting aside the jury's verdict. Based on a careful review of the record, the court finds that Brown has established that the jury was exposed to extraneous prejudicial material and that he was denied his Sixth Amendment right to trial by an impartial jury. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's motion for judgment of acquittal is denied;

2. Defendant's motion for a new trial based on the insufficiency of the evidence is denied; and

3. Defendant's motion for a new trial based on juror misconduct and the jury's exposure to extrinsic information and is granted.

6. *See also* Instruction Nos. 2, 4, and 14.