imposing a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1 based on the court's finding that Lank had committed perjury at the suppression hearing. "A defendant is subject to an obstruction of justice enhancement under U.S.S.G. § 3C1.1 if he testifies falsely under oath in regard to a material matter and does so willfully rather than out of confusion or mistake." *United States v. Chadwick*, 44 F.3d 714, 715 (8th Cir.1995) (per curiam). "Such an enhancement is warranted if the perjury occurs at a suppression hearing." *Id.* "We reverse a district court's factual findings in support of a section 3C1.1 enhancement only if they are clearly erroneous." *United States v. Mason*, 25 F.3d 605, 608 (8th Cir.), *cert. denied*, 513 U.S. 911, 115 S.Ct. 283, 130 L.Ed.2d 199 (1994). In this case, the district court did not err. As previously noted, not only did Lank's suppression hearing testimony conflict with that of four law enforcement officers, it also conflicted with his statements under oath at his guilty plea hearing in Texas. In response to the plea court's inquiry whether there was anything to suggest that his right to not be forced to make an involuntary statement" had been violated, Lank responded, "No, your honor."

[3] Lank also argues that the district court abused its discretion in granting the government's motion to depart upward under U.S.S.G. § 4A1.3, which provides for an upward departure "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." The district court did not abuse its discretion. Among other things, the court noted that Lank's criminal history score of 19 was well above the 13-point threshold for category VI," the highest criminal history category. *See United States v. Nomeland*, 7 F.3d 744, 747 (8th Cir.1993). The court also noted that Lank's offenses, which ranged from forgery to armed bank robbery, had increased in seriousness and that Lank had used drugs while in custody awaiting trial. Finally, the district court concluded that there was "no way" that Lank would ever "straighten out." In these circumstances, "the court did not err in determining that an unrepentant, incorrigible recidivist, who poses a significant threat to the safety of the community, should have a sentence imposed which is more severe than that described by the sentencing guidelines." *United States v. Saffeels*, 39 F.3d 833, 839 (8th Cir.1994) (internal quotation omitted); *see also United States v. Poe*, 96 F.3d 333, 334 (8th Cir.1996) (§ 4A1.3 departure warranted because of appellant's "pattern of continually criminal behavior") (internal quotation omitted).[3]

Accordingly, the judgment is affirmed.

WEST KEY NUMBER SYSTEM

**UNITED STATES of America, Plaintiff–Appellant,**

**v.**

**David R. BROWN, Defendant–Appellee.**

**No. 96–1414.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 22, 1996.

Decided March 11, 1997.

Rehearing Denied May 12, 1997.

Government appealed from order of the United States District Court for the District of Minnesota, David S. Doty, J., granting defendant's motion for new trial after jury convicted him of two counts of violating the Medicaid/Medicare anti-kickback statute. The Court of Appeals, Hansen, Circuit Judge, held that: (1) defendant did not waive his right to new trial based on jury's improper consideration of extrinsic information by opting for limiting instructions instead of moving for mistrial each time he learned during trial that jury had been exposed to extrinsic information, and (2) district court

3. On appeal Lank does not contest the reasonableness of the extent of the departure, *see Saffeels*, 39 F.3d at 838, and we therefore do not address it.

EXHIBIT #5

SCANNED
OCT 24 2005
U.S. DISTRICT COURT ST...

properly considered testimony of jurors during posttrial voir dire to extent that their testimony revealed that extrinsic information continued to be considered by jury.

Affirmed.

1. Federal Courts ⇐825.1

Court of Appeals reviews district court's decision to grant new trial for an abuse of discretion.

2. Federal Courts ⇐754.1, 776

Issue whether defendant waived his claim to new trial was mixed question of law and fact, in regard to which Court of Appeals would review district court's factual findings for clear error and its legal conclusion de novo.

3. Criminal Law ⇐946

Defendant did not waive his right to seek new trial based on jury's improper consideration of extrinsic information by opting for limiting instructions instead of moving for mistrial each time he learned during trial that jury had been exposed to extrinsic information; defendant did not withhold incidents of jury misconduct from trial court, and when defendant agreed to have court give limiting instructions to jury, he justifiably presumed that jury would follow court's instructions to disregard extrinsic information, and it was not until court's postverdict voir dire that defendant became aware that, despite court's instruction to the contrary, jury had continued to consider extrinsic information.

4. Criminal Law ⇐957(1, 5)

Although evidence rule generally prevents juror from testifying "as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind," rule does allow jurors to "testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." Fed.Rules Evid.Rule 606(b), 28 U.S.C.A.

Janet Newberg, Assistant U.S. Attorney, Minneapolis, MN, argued, for plaintiff-appellant.

Joseph Duffy, Chicago, IL, argued (Kevin D. Evans, on the brief), for defendant-appellee.

Before FAGG, HEANEY, and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

The government appeals the order of the district court[1] granting Defendant David R. Brown's motion for a new trial. *United States v. Brown*, 913 F.Supp. 1324 (D.Minn. 1996). A jury convicted Brown on two counts of violating the Medicaid/Medicare Anti-kickback statute, 42 U.S.C. § 1320a-7b(b) (1994). The district court granted Brown's post-verdict motion for a new trial based on its findings that the jury was exposed to prejudicial extrinsic information and that certain members of the jury engaged in misconduct. The government contends that Brown waived any claim to a new trial that he might have had. We affirm the order of the district court.

I.

On August 4, 1994, the government indict- ed Caremark, Inc. (Caremark), Brown, and four other individual defendants alleging that these parties participated in a kickback scheme involving multiple counts of mail fraud, wire fraud, money laundering, and violations of the Medicaid/Medicare Anti-Kickback statute. Among other allegations, the government claimed that Brown, a physi- cian practicing pediatric endocrinology, solic- ited and received payments from Caremark, a home health care company that was the exclusive home health distributor of an ex- pensive growth hormone called Protropin, in exchange for Brown's referral of patients to whom he prescribed Protropin and who were participants in the Medicaid program.[2]

1. The Honorable David S. Doty, United States District Judge for the District of Minnesota.

2. In the normal course of business, physic[ians] prescribing Protropin for their patients give [the] prescriptions to Caremark, and Caremark

Ass't U.S. Attorney,
g plaintiff–appel-

icago, IL, argued (Kevin
ief), for defendant–appel-

EANEY, and HANSEN,

Judge.

appeals the order of the
ing Defendant David R.
a new trial. *United*
3 F.Supp. 1324 (D.Minn.
nvicted Brown on two
the Medicaid/Medicare
e, 42 U.S.C. § 1320a–
district court granted
motion for a new trial
s that the jury was ex-
extrinsic information and
s of the jury engaged in
vernment contends that
la a new trial that
rm the order of

I.

, the government indict-
Caremark), Brown, and
defendants alleging that
ipated in a kickback
ultiple counts of mail
money laundering, and
edicaid/Medicare Anti-
mong other allegations,
ed that Brown, a physi-
ric endocrinology, solic-
ments from Caremark,
company that was the
h distributor of an ex-
one called Protropin, in
referral of patients for
Protropin and who were
dicaid program.[2]

se of business, physicians
for their patients give the
mark, and Caremark fills

On June 20, 1995, approximately one month before the trial was set to begin, Caremark pleaded guilty to one count of mail fraud and agreed to pay a total of $161 million in fines, penalties, and restitution. Consequently, only Brown and his four co-defendants[3] proceeded to trial on August 2, 1995.

On October 3, 1995, at the close of the government's case-in-chief, the district court granted the four co-defendants' motions for judgment of acquittal on all counts. The court also granted Brown's motion for judgment of acquittal on several counts but directed the trial to proceed on 19 remaining counts against Brown. Two days later, on October 5, both the government and Brown's counsel asked the court to conduct an individual voir dire of the jurors based on their belief that the jurors may have witnessed Brown's co-defendants celebrating in the hallway following their acquittals on October 3 and that the jurors may have been exposed to ensuing news accounts that referred to the co-defendants' acquittals and Caremark's previous guilty plea and agreement to pay a $161 million fine. The court agreed, and on the next day of trial, October 10, the court conducted a voir dire of the jurors initially as a panel and then individually in chambers. The court's inquiry revealed that several jurors were aware that Brown's co-defendants were acquitted; some jurors witnessed celebratory activity by Brown's co-defendants while others had friends or relatives, who had read or heard the news reports, inform them that Brown was the only remaining defendant. At this time, however, none of the jurors stated that they were aware of Caremark's guilty plea and payment of the fine.[4] At the conclusion of this voir dire, neither the government nor defense counsel moved for a mistrial. Instead, they opted for a limiting instruction. The court gave a limiting instruction in open court explaining that all of the charges against Brown's co-defendants and some of the charges against Brown had been disposed of, but the jury was not to concern itself with the reasons for their disposition and that its verdict regarding the remaining charges against Brown was to be based solely on the evidence that had been received in the courtroom.

The following day, the parties made their closing arguments, and the court instructed the jury. The jury began their deliberations the next day—Thursday, October 12. On Monday, October 16, the court received a note from juror Dale Dickinson that read:

> Judge Doty, I am concerned about information that has come to the jury but was not part of the evidence. On Thursday, October 12, when [Juror Asphaug] was asked to comment, he stated that "[Juror Ulmen] and I have information that the rest of you do not have." He went on to say that "Care mark [sic] was found guilty of this same crime and paid a fine of $367,000,000." [Juror Shelley] quickly stated that she did not want this information and did not wish to hear any more.... At the end of the day on Friday I saw this same information affect another discussion.

*Brown*, 913 F.Supp. at 1327 (quoting 10/16/95 Tr. at 6). At a meeting with lawyers for Brown and the government, the court explained that it had received this note and disclosed its contents. The court offered an instruction to be sent back to the jury. After some discussion and modifications made by defense counsel, the parties agreed to send the following written instruction back to the jury:

> The court has learned that discussions concerning matters that are not part of this case have occurred during jury deliberations. Please remember the court's instructions that you are not to consider in your deliberations on this defendant any-

the prescriptions and delivers the Protropin to the patients' homes; Caremark then submits the bills for the Protropin to the patients' insurance companies.

3. Three of Brown's co-defendants were executives at Caremark, while the fourth co-defendant was an executive at Genentech, Inc.—the company that first developed and now manufactures Protropin.

4. One juror claimed that another juror told her that he had read an article about the case that referred to Caremark's guilty plea and payment of the fine, but he denied having read the article when he was questioned by the court.

thing that may have occurred outside the courtroom. Such matters are not proper evidence and must be entirely disregarded. Your verdict must be based only on the evidence in this case.

*Id.* Neither party made a motion for mistrial.

On October 19, after three additional days of deliberations, the jury found Brown guilty on two of the nineteen counts submitted against him. After the verdict was published, and over the government's objection, the court granted defense counsel's request to have the court individually voir dire the jurors in chambers regarding the possibility that they had considered extrinsic information in reaching their verdict. Although most of the jurors denied considering any extrinsic information, two jurors revealed that Caremark's plea and payment of the fine continued to be considered by the jury. (Appellant's App. at A–125–26, A–129–30.)

Subsequently, Brown filed a motion for a new trial. After considering the government's response, the district court granted Brown's motion for a new trial based on juror misconduct and the jury's exposure to extrinsic information. *Brown,* 913 F.Supp. at 1333.

II.

[1, 2] The government contends that the dispositive issue in this case is whether Brown waived his claim to a new trial. While we review a district court's decision to grant a new trial for an abuse of discretion, *United States v. Blumeyer,* 62 F.3d 1013, 1015 (8th Cir.1995), the underlying issue of whether Brown waived his claim is a mixed question of law and fact, for which we review the district court's factual findings for clear error and its legal conclusion de novo. *See United States v. Farris,* 77 F.3d 391, 396 (11th Cir.1996); *United States v. Veltman,* 9 F.3d 718, 721 (8th Cir.1993). Thus, our review in this case involves two steps: first, given the undisputed factual findings of the district court, we review de novo the court's determination that Brown did not waive his claim to a new trial; then, based on our decision on the waiver issue, we determine whether the district court abused its discretion in granting Brown a new trial. *See Harmon v. United States Through Farmers Home Admin.,* 101 F.3d 574, 586 (8th Cir. 1996) (finding that application of abuse of discretion standard involves reviewing legal questions de novo and factual findings for clear error); *Waible v. McDonald's Corp.,* 935 F.2d 924, 926 (8th Cir.1991) (same).

A.

[3] The government argues that Brown waived his right to a new trial by opting for limiting instructions instead of moving for a mistrial each time he learned that the jury had been exposed to extrinsic information. The government relies upon several cases holding that a party who becomes aware of a problem with the jury before the verdict is rendered but fails to inform the court of the problem waives any subsequent claim the party might have to a new trial based on such jury difficulties. *See, e.g., United States v. Hoelscher,* 914 F.2d 1527, 154[illegible] (8th Cir.1990); *United States v. Dean,* [illegible] F.2d 729, 733–34 (8th Cir.1982). The Fi[illegible] Circuit succinctly articulated this princi[illegible] when it stated that "a defendant cannot le[illegible] of juror misconduct during the trial, gam[illegible] on a favorable verdict by remaining sile[illegible] and then complain in a post-verdict mo[illegible] that the verdict was prejudicially influe[illegible] by that misconduct." *United States v. Jo[illegible]* 597 F.2d 485, 488 n. 3 (5th Cir.1979). [illegible] government contends that on both Octo[illegible] 10 and October 16, Brown and his law[illegible] were fully aware of the extent and natur[illegible] the extrinsic information reaching the j[illegible] and that by failing to move for a mistria[illegible] those occasions they waived their right [illegible] new trial. Additionally, the governmen[illegible] gues that the only "new" information [illegible] vealed to Brown from the court's post-ve[illegible] voir dire on October 19 was the effect [illegible] the extrinsic information had on the ju[illegible] decisions and that such information is ba[illegible] by Federal Rule of Evidence 606(b) and [illegible] sequently cannot form the basis for a [illegible] trial.

We believe that the district court cor- ly concluded that Brown did not waive right to seek a new trial. "[W]aiver is 'intentional relinquishment or abandon- nt of a known right.'" *United States v. ino*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quoting *John- v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 9, 1023, 82 L.Ed. 1461 (1938)). In this e, Brown did not withhold the incidents of y misconduct from the trial court. The rt was fully aware of the problems with e jury as soon as, if not sooner than, Brown s. Moreover, when Brown agreed to have e court give limitings instructions to the ry, he justifiably presumed that the jury ould follow the court's instructions to disre- rd the extrinsic evidence. *See Ryan v. Board of Police Comm'rs*, 96 F.3d 1076, 1082 1 (8th Cir.1996) (jury presumed to follow ourt's instructions). It wasn't until the court's post-verdict voir dire on October 19 hat Brown became aware that, despite the ourt's instructions to the contrary, the jury d continued to consider the fact that Care- ark pleaded guilty and agreed to pay a $161 million fine.[5] Consequently, we cannot say that Brown waived his right to a new trial. *Cf. Yannacopoulos v. General Dynam- ics Corp.*, 75 F.3d 1298, 1305 (8th Cir.1996) (finding that a party who had not objected to the court's limiting instruction had waived his claim to new trial where there was no evidence that the jury had disregarded the instruction).

Moreover, we do not believe that Rule 606(b) prohibits the consideration of the evi- dence that the jury continued to consider Caremark's plea and payment of a fine. Al- though Rule 606(b) generally prevents a ju- ror from testifying "as to any matter or statement occurring during the course of the jury's deliberations or to the effect of any- thing upon that or any other juror's mind," the rule does allow jurors to "testify on the question whether extraneous prejudicial in- formation was improperly brought to the jury's attention or whether any outside in- fluence was improperly brought to bear upon any juror." Fed.R.Evid. 606(b). We believe that under Rule 606(b) the district court properly considered the testimony of the jurors to the extent that their testimony revealed that the extrinsic information con- tinued to be considered by the jury. Admit- tedly, some of the court's questions as well as portions of the jurors' testimony may have encroached areas that are off-limits un- der Rule 606(b). (*See* Appellant's App. A- 126, A-130.) In granting Brown's motion for a new trial, however, the district court addressed this problem and explicitly based its decision only on evidence admissible un- der Rule 606(b). *Brown*, 913 F.Supp. at 1331 n. 4. Because Brown did not know that the jury continued to consider the prej- udicial extrinsic information regarding Care- mark until after the verdict, we conclude that the district court properly determined that Brown had not waived his right to a new trial.

B.

In its reply brief, the government for the first time argues that even if Brown did not waive his right to a new trial, he is not entitled to one because the strength of the government's case against Brown sufficiently outweighed any possible prejudice caused by the extrinsic evidence. Absent some reason for failing to raise an argument in an opening brief, this court will not consider an argu- ment first raised in a reply brief. *United States v. Darden*, 70 F.3d 1507, 1549 n. 18 (8th Cir.1995). The government has not of- fered any justification for its failure to raise this issue in its initial brief; consequently, we choose not to review it.[6]

Having found that Brown did not waive his right to a new trial, we hold that the district

5. Although Brown, on appeal, submits evidence that the court's second limiting instruction reached only one member of the jury, we limit our review to the record as it appeared before the district court.

6. We note that even while raising this argument in its reply brief, the government emphasizes that "the *sole* issue on this appeal" is whether Brown waived his right to a new trial. (Appellant's Reply Br. at 5.)

court did not abuse its discretion in granting Brown's motion for a new trial.[7, 8]

III.

Accordingly, we affirm the order of the district court.

WEST KEY NUMBER SYSTEM

Thomas MILLER, Petitioner–Appellant,

v.

Kelly LOCK; Jay Nixon, Respondents–Appellees,

No. 96–1574.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1997.

Decided March 11, 1997.

Petitioner sought habeas corpus relief. The United States District Court for the Western District of Missouri, Dean Whipple, J., denied petition. Petitioner appealed. The Court of Appeals, Kopf, District Judge, sitting by designation, held that: (1) evidence was sufficient to support defendant's first-degree arson conviction; (2) ineffective assistance of counsel claims were procedurally barred; and (3) petitioner was not constitutionally entitled to counsel in state postconviction proceedings.

Affirmed.

1. **Federal Courts** ⟹776, 850.1

Court of Appeals reviews district court's conclusions of law de novo and its findings of fact for clear error.

2. **Arson** ⟹37(1)

Evidence was sufficient to support defendant's conviction for first-degree ar[son] even though some witnesses placed defendant at tavern at time of fire; witnesses testified that defendant said he was going to do them a "big favor" by burning down a house into which a patrolman was going to move, left the tavern shortly before the fire started and returned an hour later, smelling like diesel fuel, and told witnesses the next day to keep their mouths shut. V.A.M.S. § 569.040.

3. **Criminal Law** ⟹1144.13(3), 1159.2[...]

In determining the sufficiency of evidence to support a conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

4. **Habeas Corpus** ⟹365

Habeas corpus petitioner's claim that trial counsel was constitutionally ineffective when counsel failed to procure a[...] evidence relevant to alibi defense was barred by petitioner's failure to raise issue in [...] motion for postconviction relief. U.S.C.A. Const.Amend. 6; V.A.M.R. 29.15.

5. **Habeas Corpus** ⟹365

Failure to file timely motion for postconviction relief in state court is procedural default that will bar habeas review [...] cause and prejudice. 28 U.S.C.A. § 2[...]

6. **Habeas Corpus** ⟹381

Habeas corpus petitioner [...] defaulted on ineffective assistance of counsel claim based on counsel's alleged failure to advise him of deadline for filing [...] tion motions, where petitioner [...] that argument on postconviction [...] U.S.C.A. § 2254; V.A.M.R. 29.1[5]

7. **Habeas Corpus** ⟹406

Before claim of ineffective [...] counsel can constitute "cause" for [...] default, both factual grounds and [...]

7. So holding, we need not review the court's decision to grant a new trial on the alternative basis of individual juror misconduct.

8. We also find it unnecessary to [...] lee's motion for enlargement of the [...]